VOICESTREAM WIRELESS CORPORATION; Powertel Inc, Plaintiffs—Appellants,

v.

FEDERAL INSURANCE COMPANY; American Motorists Insurance Company; Lumbermens Mutual Casualty Company; St. Paul Fire & Marine Insurance Company; Hartford Fire Insurance Company, Defendants—Appellees.

No. 03–35158.

D.C. No. CV–02–01415–MJP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2004.

Decided Sept. 14, 2004.

Jeffrey I. Tilden, Esq., James Richard Murray, Franklin D. Cordell, Christie L. Snyder, Gordon Murray Tilden LLP, Seattle, WA, for Plaintiffs–Appellants.

Thomas Martin Jones, Esq., Michael D. Handler, Cozen O'Connor, Seattle, WA, Rolf E. Gilbertson, Zelle & Larson, Minneapolis, MN, Mary R. DeYoung, Reed McClure, Joseph D. Hampton, Esq., Stephanie Scheier Andersen, Esq., Gordon & Polscer, Seattle, WA, John L. Riedl, Esq., Andrew R. McCloskey, Nancy L. Beattie, Duane Morris, LLP, San Diego, CA, Carl Edward Forsberg, Esq., John Patrick Hayes, Esq., Forsberg & Umlauf, P.S., Seattle, WA, David R. Biester, Norman C. Kleinberg, George A. Tsougarakis,

Hughes, Hubbard & Reed, New York, NY, for Defendants–Appellees.

Before HUG, TASHIMA, and PAEZ, Circuit Judges.

## MEMORANDUM *

In this insurance coverage dispute, Plaintiffs VoiceStream Wireless Corporation and Powertel, Inc. appeal the district court's grant of summary judgment to Federal Insurance Company, American Motorists Insurance Company, Lumbermens Mutual Casualty Company, St. Paul Fire and Marine Insurance Company, and Hartford Fire Insurance Company ("Defendant Insurers"). The Defendant Insurers disclaimed any duty to defend or indemnify VoiceStream and Powertel in the underlying actions on the basis of their determination that the plaintiffs in those cases did not seek "damages because of bodily injury" as defined by the respective insurance policies. The district court agreed, ruling that there was no duty to defend or indemnify VoiceStream or Powertel in the underlying actions. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

The district court's grant of summary judgment is reviewed de novo. See United States v. City of Tacoma, 332 F.3d 574, 578 (9th Cir.2003). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). See Suzuki Motor Corp. v. Consumers Union, Inc., 330 F.3d 1110, 1131 (9th Cir.2003). Both parties agree that Washington law governs this dispute.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

## I.

■ The Defendant Insurers first argue that the underlying complaints do not allege "bodily injury" because they only reference the possibility of future harm. Viewed in its totality, however, the complaint[1] is ambiguous as to whether it alleges that radio frequency radiation ("RFR") from cell phones causes present "adverse health effects" or "injury"—or simply a risk of future injury. At times the complaint alleges an invasion of harmful radiation to a cell phone user that causes a present injury. *See, e.g.,* Gimpelson Am. Compl. ¶ 157 (defendants "intentionally inflicted offensive, non-consensual touching to the Plaintiffs ... by exposing them to radio frequency radiation (RFR) that they knew to cause biological changes in the human body in an [sic] adverse health effects"). At other points, the complaint alleges a "biological injury" that causes a *future* health risk. *See, e.g.,* Gimpelson Am. Compl. ¶ 5 ("WHHPs [Wireless Hand Held Phones], which create a health risk to users by causing biological injury"). Finally, at other points the complaint appears to allege that RFR creates a future risk of "biological injury"—as opposed to

inflicting present biological injury which creates a future health risk. *See, e.g.,* Gimpelson Am. Compl. ¶ 60 ("Plaintiffs are ... at increased risk for biological injury ...").

"The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.... If the complaint is ambiguous, it will be liberally construed in favor of triggering the insurer's duty to defend." *Truck Ins. Exch. v. Vanport Homes, Inc.,* 147 Wash.2d 751, 58 P.3d 276, 281–82 (2002) (en banc) (internal quotations and citations omitted). Construing the ambiguity in favor of the insured, the complaints allege a *present* "injury" in the form of "an adverse cellular reaction and/or cellular dysfunction." Gimpelson Am. Compl. ¶ 1.

■ The Defendant Insurers next argue that even if the underlying complaints allege a present "adverse cellular change" this nonetheless does not qualify as "bodily injury" under the respective policies.[2] Washington courts have not addressed this question.[3] However, logic dictates that it

---

1. Because the Gimpelson Amended Complaint is the only underlying complaint to name both VoiceStream and Powertel, we reference its provisions. All of the underlying complaints, however, are substantially the same, and the parties do not contend otherwise. Thus, our analysis applies with equal force to all of the underlying complaints.

2. All but one of the policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." St. Paul's policy defines "bodily injury" as "any physical harm, including sickness or disease, to the physical health of other persons." The difference in text is inconsequential for our purposes.

3. Defendant insurers rely on *E–Z Loader Boat Trailers, Inc. v. Travelers Indemnity Co.,* 106 Wash.2d 901, 726 P.2d 439 (1986) (en banc)

for the proposition that simply alleging harm to human cells is insufficient to establish bodily injury. However, in *E–Z Loader* the plaintiffs in the underlying actions alleged claims for sex and age discrimination. *Id.* at 441. As a component of their claims for damages, the plaintiffs requested damages for emotional suffering as a result of the alleged discrimination. *Id.* at 442. The insurers denied coverage, stating that these claims did not constitute "bodily injury" within the meaning of the policy. *Id.* In distinguishing between the plaintiffs' claims for emotional suffering, and the policy language, the Washington Supreme Court stated: "[t]he coverage contemplated actual bodily injury, sickness or disease resulting in physical impairment, as contrasted to mental impairment." *Id.* at 443. Thus, when placed in context, the court's reference to "bodily injury" as "physical impairment" is best understood as the

is sufficient to allege injury to human cells. For example, cancer itself is a "bodily injury" that occurs in human cells. The policy provisions do not explicitly *exclude* coverage for allegations of injury to human cells, and to construe cellular harm as insufficient would be to, in effect, read an additional exclusion into the policy. Further, although Washington state courts have not addressed this precise issue, other jurisdictions that have considered this issue have found that alleging cellular harm can constitute "bodily injury" for purposes of commercial general liability policies. *See Zurich Ins. Co. v. Raymark Indus.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150, 159–60 (1987); *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502, 506 (1993); *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 338 Md. 131, 656 A.2d 779, 785–86 (1995).[4]

court's attempt to contrast claims for "bodily injury" with claims for emotional distress, not to precisely define the contours of what, at a minimum, would constitute sufficient harm to qualify for coverage. In short, the issue of what constitutes actual bodily harm was not addressed in *E–Z Loader;* rather the court addressed the more narrow issue of whether claims for emotional damages were encompassed within the term "bodily injury." Regardless, in determining whether the Defendant Insurers have a duty to defend, the allegations of cellular damage as constituting the precursors of cancer are sufficient to allege physical injury within the meaning of the policies.

4. Similarly, there is no provision in any of the policies that requires the alleged injury to be capable of diagnosis, or that imposes a manifestation requirement. The Second Circuit has held that, under a similar commercial insurance policy, equating the word "injury" with "manifestation of injury" was "inconsistent" with the policy language. *See Am. Home Prods. Co. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 764 (2d Cir.1984). The court reasoned that "[s]ome types of injury to the body occur prior to the appearance of any symptoms; thus, the manifestation of the injury

## II.

■ The Defendant Insurers further argue that even if the underlying complaints allege present "bodily injury," the prayer for relief of the cost of a headset does not constitute a request for "damages because of bodily injury" because a headset would be inadequate relief for such injury. This argument is unpersuasive. First, the prayers for relief in the underlying actions do not solely ask for the cost of a headset, but rather "For compensatory damages *including but not limited to* amounts necessary to purchase a WHHP headset for each class member." (emphasis added). The Gimpelson Amended Complaint also seeks "maximum legal and equitable relief" for the alleged bodily injury, as well as punitive damages. Second, the policies themselves do not define the term "damages."[5] To the extent that seeking damages, in part, in the form of a headset

may well occur after the injury itself. There is no language in the policies that purports to limit coverage only to injuries that become apparent during the policy period." *Id.* Here, the definition of "bodily injury" in the policies does not impose a diagnosis or manifestation requirement. Just as in *American Home Products*, reading into the policies at issue a requirement that the underlying complaints must allege an injury capable of diagnosis or requiring manifestation of symptoms would be inconsistent with the plain language of the policies.

5. All of the policies, except for St. Paul's policy, state that "Damages for bodily injury *include* damages claimed by any person or organization for care or loss of services resulting at any time from the bodily injury." (emphasis added). These policies, however, do not further define either the term "damages" or the phrase "damages because of bodily injury." St. Paul's policy states that "We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury ..." St. Paul's policy does not further define the term "damages."

neither clearly falls within a policy provision, nor is clearly excluded by the text of the policy, the policies are ambiguous. As with "bodily injury," this ambiguity must be construed against the Defendant Insurers.

### III.

Finally, the Defendant Insurers argue that two policy exclusions provide alternate grounds for affirming the district court's summary judgment ruling. They argue that the underlying complaints allege that the WHHPs are a defective product, and therefore that two of the business risk exclusions apply. These arguments are without merit, however, because the underlying complaints—liberally construed—allege bodily injury, not that the underlying plaintiffs' cell phones do not work for their intended purpose (*i.e.*, making and receiving phone calls). Thus, the two exclusions, which appear in all of the policies at issue, regarding damage to property do not apply.

### IV.

Because we reverse the district court's ruling on the Defendant Insurers' duty to defend, the district court's summary dismissal of plaintiffs' claim for indemnity, which was premised on the same rationale as its ruling on the duty to defend, must be vacated and remanded for further proceedings consistent with this disposition.

We REVERSE the district court's summary judgment ruling in favor of Defendant Insurers on the duty to defend, and VACATE the court's ruling on the duty to indemnify, and REMAND for further proceedings consistent with this disposition.

Plaintiffs–Appellants shall recover their costs on appeal.